IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **EAST EL PASO PHYSICIANS'** | § | |
| **MEDICAL CENTER, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-16-CV-44-KC** |
| | § | |
| **AETNA HEALTH INC. AND AETNA** | § | |
| **LIFE INSURANCE COMPANY,** | § | |
| | § | |
| **Defendants**. | § | |

## ORDER

On this day, the Court considered Defendants' Aetna Health Inc. and Aetna Life Insurance Company's Second Motion to Compel Arbitration ("Motion"), ECF No. 15, filed on July 6, 2016 in the above-captioned case.  For the reasons set forth below, the Motion is **GRANTED**.

## I.   BACKGROUND

Plaintiff, East El Paso Physicians Medical Center, LLC, is a general acute care hospital in El Paso County, Texas.  Am. Compl. 1, 3, ECF No. 12.  Defendant Aetna Health Inc. is a health maintenance organization; Defendant Aetna Life Insurance Company is an insurance company.  Answer 1.  Prior to this litigation, Plaintiff and Defendants entered into a Hospital Services Agreement ("HSA").  The HSA contains a clause that requires that certain enumerated categories of disputes be resolved through binding arbitration.  The relevant portion of the arbitration clause follows:

> Any controversy or claim arising out of or relating to this Agreement including the breach, termination, or validity of this Agreement, except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief, shall be settled by binding arbitration administered by the American Arbitration Association ("AAA") and conducted by a sole Arbitrator ("Arbitrator") in accordance with the AAA's Commercial Arbitration Rules ("Rules"). Except as modified by this Section 8.3, the arbitration shall be governed by the Federal

Arbitration Act, 9 U.S.C. §§ 1-16, to the exclusion of state laws inconsistent with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 or that would produce a different result, and judgment on the award rendered by the Arbitrator (the "Award") may be entered by any court having jurisdiction of the claim or controversy at issue.

Defs.' Mot. to Compel Arbitration, ECF No. 5-2, Ex. A-1 at 19.[1]

Plaintiff provided medical care and treatment to Defendants' insured customers.  Am. Compl. 2.  Plaintiff subsequently billed Defendants for reimbursement of expenses related to the medical treatment which Plaintiff provided.  *Id.*  Defendants made payments to Plaintiff for those claims.  *Id.*  Defendants initiated an audit of the paid claims and determined that they had overpaid Plaintiff for the medical services provided.  *Id.* at 3.  Defendant demanded a refund from Plaintiff and, when no such refund was forthcoming, began assessing payment penalties against Plaintiff.  *Id.*

Plaintiff filed a civil action seeking monetary relief of at least $900,000.00, entry of a temporary restraining order against Defendant, and temporary and permanent injunctive relief against Defendants on January 6, 2016, in the County Court at Law 3, El Paso County, Texas, under Cause No. 2016DCV0041 (the "State Court Action").  Notice of Removal of Civil Action 1, ECF No. 1.  This action was removed to the United States District Court for the Western District of Texas, El Paso Division, on February 9, 2016.  *Id.* at 2-3.  Defendants moved to compel arbitration on March 24, 2016.  Defs.' Mot. to Compel Arbitration and Dismiss Pl.'s Claims, ECF No. 5.  Plaintiff sought leave to amend its Complaint on June 14, 2016.  Pl.'s Opposed Mot. for Leave to File First Am. Compl., ECF No. 10.   The Court granted leave to amend and mooted Defendants' original Motion to Compel Arbitration on June 16, 2016.[2]  Plaintiff filed its Amended Complaint on June 16, 2016.  Am. Compl.  Defendants filed the instant Motion on July 6, 2016.

---

[1] The HSA is a sealed exhibit to Defendant's original Motion to Compel Arbitration, ECF No. 5, filed on March 24, 2016.

[2] The Court granted leave to amend and mooted Defendants' original motion via text order.

II.     **DISCUSSION**

A.       **Standard**

The Federal Arbitration Act ("FAA") provides that pre-dispute arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has explained that this provision manifests a "liberal federal policy favoring arbitration agreements" and that the broad purpose of the FAA is to "to reverse the longstanding judicial hostility to arbitration agreements." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-25 (1991) (internal quotation marks omitted). Accordingly, doubts about the scope of coverage of an arbitration clause in a contract must be resolved in favor of arbitration. *See AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986); *Sharpe v. AmeriPlan Corp.*, 769 F.3d 909, 914 (5th Cir. 2014).

Indeed, arbitration should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Houston Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 412 (5th Cir. 2014) (quoting *AT&T*, 475 U.S. at 650). However, "the policy that favors resolving doubts in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or authorize an arbiter to disregard or modify the plain and unambiguous provisions of the agreement." *Smith v. Transp. Workers Union of Am., AFL-CIO Air Transp. Local 556*, 374 F.3d 372, 375 (5th Cir. 2004). Courts should not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (citing *Volt Info. Scis, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478.

When a party declines to arbitrate under a written agreement for arbitration, the aggrieved party may move the court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  "A party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."  *Gilmer*, 500 U.S. at 26; *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).  Determining whether the parties agreed to arbitrate the particular type of dispute at issue requires consideration of two issues: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement."  *Nelson v. Watch House Int'l, LLC*, 815 F.3d 190, 192–93 (5th Cir. 2016) (internal quotation marks omitted).[3]

### B.     Analysis

Defendants contend that the HSA's binding arbitration provision constitutes an express agreement to arbitrate the instant dispute.  Defs.' Mot. 5.  Specifically, Defendants argue that the HSA requires that the arbitration provision stipulates that the arbitrator must decide the question of arbitrability of Plaintiff's claims.  *Id.* at 6-7.  Alternatively, Defendants claim that Plaintiff's claims fall within the scope of the arbitration clause.  *Id.* at 8-12.  Moreover, Defendants assert that Employee Retirement Income Security Act of 1974 ("ERISA") does not preempt the FAA.  *Id.* at 12-13.  Lastly, Defendants urge that Plaintiff's claims must be stayed, or alternately, dismissed pending arbitration.  *Id.* at 13-14.  Plaintiff responds that it has brought claims for injunctive relief which expressly fall outside the scope of the arbitration clause.  Pl.'s Resp. 7.  Plaintiff also contends that the arbitration clause is preempted by ERISA and, alternatively, is unenforceable under ERISA.  *Id.* at 12.  The Court evaluates each argument in turn.

---

[3] "Though the Federal Arbitration Act reflects a liberal federal policy favoring arbitration, that policy does not apply to the determination of whether there is a valid agreement to arbitrate between the parties."  *Nelson*, 815 F.3d at 193. (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008) (internal quotation marks omitted)).

**1.      The HSA requires that the arbitrator resolve the question of arbitrability**

The Court begins its inquiry into whether the parties agreed to arbitrate this dispute by considering "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Nelson*, 815 F.3d at 192–93. As to the first issue, Defendants attached to their Motion a sealed copy of the Hospital Services Agreement containing the arbitration clause. Defs.' Mot., ECF No. 15, Ex. A-1. Plaintiff acknowledges that "that the HSA was in place between the parties" and that it "contains a provision requiring binding arbitration." Pl.'s Resp. 3, 13. Further, Plaintiff does not dispute the validity of the arbitration agreement. *See generally* Pl.'s Resp. Consequently, as to the first issue, the Court finds that there is a valid agreement to arbitrate between the parties. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 341 (5th Cir. 2004) ("[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract."). Thus, at first glance, it appears that the Court's inquiry must focus on the second issue—whether this dispute falls within the scope of the arbitration agreement. *See Nelson*, 815 F.3d at 192-93.

However, before turning to the scope of the arbitration agreement, the Court must determine whether the parties have agreed to arbitrate the question of arbitrability itself. If the parties have agreed to have the arbitrator determine whether the dispute is arbitrable, the Court has must refer the question of arbitrability to the arbitrator. *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). And indeed, Defendants contend that "an arbitration provision which expressly incorporates the AAA Rules constitutes clear and unmistakable evidence the parties

agreed to arbitrate 'arbitrability.'" Defs.' Mot. 6. Defendants explain that the arbitration provision here expressly incorporates the AAA Rules and, as a result, that the parties agreed to arbitrate arbitrability. *Id.* at 8-9. Plaintiff does not contest this claim directly. *See* Pl.'s Resp. 6. Instead, Plaintiff claims that "[a]rbitrability is not to be assumed without clear and unmistakable evidence that the parties so intended it" and that "the presumption that arbitration is favored is reversed for any ambiguities over an agreement to submit arbitrability to an arbitrator." *Id.* But Plaintiff pursues this line of argument no further—never contending that ambiguity in *this* case militates against submitting questions of arbitrability to an arbitrator. *See id* at 6-8.

"Ordinarily, whether a claim is subject to arbitration is a question for a court." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014). However, the Supreme Court has declared that parties may agree to arbitrate the arbitrability of particular claims so long as their intention to arbitrate arbitrability is clearly and unmistakably reflected in their agreement. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007). As Plaintiff counsels, the presumption resolving doubts concerning the scope of arbitrable issues in favor of arbitration is reversed when considering whether the parties have agreed to arbitrate arbitrability. *See First Options*, 514 U.S. at 945. The Fifth Circuit recently expanded the test for arbitrability, which now mandates that an arbitrator must decide arbitrability when two factors are met: (1) the parties "clearly and unmistakably" intended to delegate this power to the arbitrator, and (2) the assertion of arbitrability is not "wholly groundless." *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014).

As to the first factor, Defendants argue that they explicitly incorporated the American Arbitration Association Rules ("AAA Rules") into their agreement with Plaintiff and, in so doing,

evinced a clear and unmistakable intention to arbitrate arbitrability.  Defs.' Mot. 7-8.  Plaintiff

offers no counterargument other than its recitation of the legal standards for agreements to arbitrate

arbitrability.  *See* Pl.'s Resp. 6-8.  Regardless, in the Fifth Circuit, express incorporation of the

AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate

arbitrability.  *See Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675

(5th Cir. 2012) (collecting cases); *see also Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70

(2010) (holding that a clause delegating to the arbitrator disputes related to the arbitration

agreement's enforceability, validity, or scope is clear and unmistakable evidence that the parties

agreed to arbitrate arbitrability).[4]

The HSA states that: "[a]ny controversy or claim arising out of or relating to this Agreement

. . . shall be settled by binding arbitration in accordance with the AAA's Commercial Arbitration

Rules[.]"  Defs.' Mot. to Compel Arbitration, Ex. A-1 at 19.  Rule 7(a) of the AAA Rules provides

that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any

objections with respect to the existence, scope, or validity of the arbitration agreement or to the

arbitrability of any claim or counterclaim."  American Arbitration Association, Commercial

Arbitration Rules and Mediation Procedures 13 (2013), https://www.adr.org/aaa/Show

Property?nodeId=/UCM/ADRSTG_004103.  The HSA expressly incorporates the AAA Rules; thus,

the parties clearly and unmistakably intended to delegate questions of arbitrability to the arbitrator.

*See Petrofac*, 687 F.3d at 675.

As to the second factor, neither party offers argument on the precise question of whether

Defendants' assertion of arbitrability is "wholly groundless," though both parties discuss at some

---

[4] An arbitration clause "need not recite verbatim that the parties agree to arbitrate arbitrability in order to manifest clear and unmistakable agreement."  *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 765 F.3d 396, 410 n.28 (5th Cir. 2014).

7

length the related issue of whether Plaintiff's claims fall within the scope of the arbitration clause. Defendants maintain that the arbitration clause "embraces all disputes between the parties having a significant relationship to the contract . . . regardless of the label attached to the dispute."  Defs.' Mot. 9.  Defendants clarify that the Court's inquiry should not be limited to the legal labels that Plaintiff attaches to its claims, but should instead be trained on the factual allegations underlying Plaintiff's claims.  *See id.*   Defendants conclude that "Plaintiff cannot avoid its agreement to arbitrate by couching its claims as claims for equitable relief."  Defs.' Reply 4.  Plaintiff retorts that "the clear and unambiguous language of the arbitration provision in the HSA states that the arbitration requirements thereunder do not apply to claims seeking 'any form of equitable relief[.]'" Pl.'s Resp. 7.  Plaintiff continues: "Because the claims asserted, and remedies sought . . . are, without question, equitable in nature, Aetna cannot compel arbitration of the Hospital's claims[.]" *Id.*   The nub of Plaintiff's argument appears to be that Defendants "mischaracterize . . . claims for injunctive relief . . .  as a claim for damages," when Plaintiff also intends to "challeng[e] [Defendants'] practice of demand[ing] repayment of previously paid health care benefits" by seeking "preliminary and permanent injunctions."  *Id.* at 4.

The Fifth Circuit distinguishes "'narrow' arbitration clauses that only require arbitration of disputes "arising out of" the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract."  *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998).  Crucially here, the Fifth Circuit held in *Pennzoil* that broad arbitration clauses "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute."  *Id.*   The Fifth Circuit echoed this observation in a later case examining whether a plaintiff's claims fell within the scope of an arbitration agreement: "Our

inquiry is not guided by the legal labels attached to the plaintiffs' claims; rather, it is guided by the factual allegations underlying those claims." *Harvey v. Joyce*, 199 F.3d 790, 795 (5th Cir. 2000) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 622 n.9 (1985)).

The arbitration agreement at issue here encompasses "any controversy or claim arising out of *or relating to* this Agreement," Defs.' Mot. to Compel Arbitration, Ex. A-1 at 19 (emphasis added); therefore, it is "broad" within the meaning of *Pennzoil. See* 139 F.3d at 1061. This is significant because broad arbitration agreements embrace all disputes having a significant relationship to the contract irrespective of the label attached to the dispute. *See id.* While the Court is mindful that Plaintiff seeks not only damages but also an injunction that prospectively bars Defendants from recouping funds from overpaid claims, it cannot dismiss as "wholly groundless" Defendants' argument that Plaintiff's claims are truly damages claims masquerading as claims for injunctive relief. *Douglas*, 757 F.3d at 462.

An assertion of arbitrability is not wholly groundless when there is a "*plausible* argument that the dispute was covered by the [arbitration] agreement." *Id.* at 463; *see also Kubala*, 830 F.3d 199, 202 n.1 (5th Cir. 2016) (describing cases where the argument for arbitrability is wholly groundless as "exceptional"). It follows that the Court's task in evaluating whether an assertion of arbitrability is wholly groundless is "simply to determin[e] whether or not a plausible argument [that the dispute was covered by the arbitration agreement] exists." *Grasso Enterprises, LLC v. CVS Health Corp.*, 143 F. Supp. 3d 530, 541 (W.D. Tex. 2015) (citing *Douglas*, 757 F.3d at 463). In *Grasso Enterprises*, the court found that it was plausible that a broad arbitration clause could be read to favor arbitrating arbitrability even though the same arbitration clause contained the following language: "nothing in this provision shall prevent either party from seeking preliminary injunction relief." 143 F. Supp. 3d at 534 (internal quotation marks omitted).

9

Here, Defendants point out that a moving party must show irreparable harm to maintain a claim for injunctive relief and urge that Plaintiff has not alleged facts showing that it will suffer irreparable harm if an injunction is not granted. Mot. to Compel 10-11 n.17. Especially in light of Fifth Circuit authority instructing that the factual allegations underlying Plaintiff's claims, and not the legal labels attached to those claims, must guide this inquiry, the Court is reluctant to conclude that Defendants' argument is implausible. *See Harvey*, 199 F.3d at 795. Indeed, the *Grasso Enterprises* court found that a party's assertions of arbitrability were plausible without considering arguments that one party's claims for injunctive relief were merely damages claims in disguise. *See* 143 F. Supp. 3d at 534. Still further, the HSA prescribes a procedure for recovering overpayments and outlines Defendants' rights to initiate third-party audits. Defs.' Mot. to Compel Arbitration, Ex. A-1 at 9-16. It follows that Plaintiff's claim for injunctive relief is inextricably linked to the HSA. *See Pennzoil*, 139 F.3d at 1061. As a result, the Court concludes that the dispute about injunctive relief has "a significant relationship" to the contract. *See id.* In sum, the Court finds that Defendants' assertion of arbitrability is not "wholly groundless." *Douglas*, 757 F.3d at 462; *see also Grasso Enterprises*, 143 F. Supp. 3d at 541.

More broadly, the Court notes that a number of other courts have declined to address arbitrability, leaving that determination to the arbitrator, even when the arbitration clause at issue contained an equitable relief exception. *See, e.g., Grasso Enterprises*, 143 F. Supp. 3d at 543 (applying *Douglas* factors); *DXP Enterprises, Inc. v. Goulds Pumps, Inc.,* No. H-14-112, 2014 WL 5682465, at *4-*7 (S.D. Tex. Nov. 4, 2014) (holding that parties must arbitrate arbitrability when arbitration clause stated that parties may apply to a court for equitable relief "notwithstanding" a general requirement to arbitrate arbitrability); *Johnson v. Dentsply Sirona Inc.*, No. 16-CV-0520, 2016 WL 5875023, at *6 (N.D. Okla. Oct. 7, 2016) (holding that a presumption of arbitrability

attaches to a broad arbitration clause containing a "nonarbitrable carve-out cover[ing] 'specific performance or injunctive relief'"); *WMT Inv'rs, LLC v. Visionwall Corp.*, No. 09-CIV.-10509, 2010 WL 2720607, at *4 (S.D.N.Y. June 28, 2010) (collecting cases).  Having found that both *Douglas* factors favor arbitrating arbitrability, the Court finds that the question of arbitrability of Plaintiff's claims must be resolved by the arbitrator.  *See Douglas*, 757 F.3d at 462.

### 2.   Whether Plaintiff's claims fall within the scope of the arbitration clause is a question for the arbitrator

Defendants offer a series of arguments to the effect that Plaintiff's claims fall within the scope of the arbitration clause in the event that the Court rejects its overarching claim that the arbitrability determination belongs to the arbitrator in the first place.  *See* Defs.' Mot. 8-12. Plaintiff responds by arguing that its claims for injunctive relief must be exempt from arbitration in keeping with the explicit language of the HSA outlining just such an exemption.  *See* Pl.'s Resp. 7. However, as explained above, it is not this Court's place to determine the arbitrability of Plaintiff's claims; Fifth Circuit precedent clearly assigns that task to the arbitrator.  *See Douglas*, 757 F.3d at 462.  Accordingly, the Court addresses this particular dispute no further.

### 3.   ERISA does not preempt the arbitration provision of the HSA

Defendants assert that ERISA does not preempt the FAA in the Fifth Circuit.  Defs.' Mot. 12.  Plaintiff declares that ERISA must preempt the arbitration agreement in the HSA, noting that "ERISA governs 1) Aetna's recoupment efforts and 2) the Hospital's claims."  Pl.'s Resp. 12. ERISA vests exclusive jurisdiction for civil enforcement actions arising under its provisions in the federal district courts.  *See* 29 U.S.C. § 1132(a)(2).  Yet the FAA ratifies the enforceability of the arbitration provisions in the HSA.  *See* 9 U.S.C. §§ 2, 3.  To be sure, there is a seeming tension between these two statutory dictates.  However, the Fifth Circuit has taken up this issue and held

that "Congress did not intend to exempt statutory ERISA claims from the dictates of the [Federal] Arbitration Act." *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996).

Plaintiff identifies *Fisher v. Blue Cross*, 879 F. Supp. 2d 581 (N.D. Tex. 2012) as a case that supports its view that ERISA must preempt the FAA here. *See* Pl.'s Resp. 12. Plaintiff explains that *Fisher* stands for the proposition that insurers not acting in a fiduciary capacity have no standing under ERISA to recoup alleged overpayments. *Id.* Plaintiff concludes that "Aetna finds itself in a similar position here—it does not retain the requisite fiduciary status to perform recoupments." Pl.'s Resp. 12-13. This may well be an accurate reading of *Fisher* that nonetheless wanders afield of the operative question here: must ERISA preempt the FAA? Plaintiff's explanation of the relationship between an insurer's fiduciary status and its standing to mount claims under ERISA does nothing to bolster its position that ERISA must preempt otherwise valid arbitration agreements under the FAA. Likewise, *Fisher*, which mentions the word arbitration only once, in a footnote, and does not address preemption, arbitrability, or the validity or scope of arbitration provisions in any way, offers no support for Plaintiff's preemption argument. *See generally* 879 F. Supp. 2d 581. In the end, the Fifth Circuit has squarely held that ERISA does not preempt the FAA, and this Court must not hold otherwise. *See Kramer*, 80 F.3d at 1084. Thus, ERISA does not preempt the FAA.

### 4.      ERISA does not render unenforceable the arbitration provision in the HSA

Plaintiff also asserts that ERISA limits the scope of the arbitration provisions in the HSA. Pl.'s Resp. 9. Plaintiff explains that the regulations governing ERISA claim procedures in the adverse-benefit-determination context establish a reasonableness test for mandatory arbitration provisions. *See* 29 C.F.R. 2560.503-1(c)(4). Yet even assuming for the sake of the argument that

these regulations apply here—which is far from clear, given that Plaintiff does not cite to ERISA claim procedures that govern in the recoupment-for-overpayment context—Plaintiff's argument is premature. As demonstrated above, Plaintiff and Defendants agreed to arbitrate the arbitrability of claims by entering into an agreement that incorporated the AAA Rules. *See Petrofac*, 687 F.3d at 675. It follows that the determination of whether ERISA limits the scope of the arbitration provisions in the HSA is for the arbitrator, not this Court. *See id.*

## III.   CONCLUSION

For the reasons set forth above, Defendants' Motion, ECF No. 15, is **GRANTED**.

Accordingly, it is hereby **ORDERED** that all claims and causes of action in this case are submitted to arbitration for an arbitrability determination in accordance with the parties' agreement.

**IT IS FURTHER ORDERED** that the parties shall notify the Court if the arbitrator determines that any claims in this matter are non-arbitrable within seven days of such a determination.

**IT IS FURTHER ORDERED** that Defendant's request to stay discovery pending this Court's ruling on the Motion is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that Defendant's request to stay the trial of this action pending arbitration is **GRANTED**.

Finally, **IT IS FURTHER ORDERED** that this case be **ADMINISTRATIVELY CLOSED** subject to reopening by motion upon completion of the relevant arbitration proceedings.

SO ORDERED.

SIGNED this 2nd day of March, 2017.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE